UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRODUCTIVITY TECHNOLOGIES
CORPORATION,

                Plaintiff,                    Case Number 16-13088
                                                    Honorable David M. Lawson
v.

JESSE LEVINE, JULIUS LEVINE, and
JULIUS S. LEVINE REVOCABLE
TRUST FBO JULIUS S. LEVINE,

                Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff Productivity Technologies Corporation, a Delaware corporation, filed a complaint in this case against defendants Jesse Levine, Julius Levine, and Julius S. Levine Revocable Trust alleging tort claims against all defendants and breach of fiduciary duties against Jesse Levine. The claims arise from the defendants' conduct as officers of Productivity's wholly-owned subsidiary, Atlas Technologies, LLC, of which Productivity is the sole member. The Levines entered the picture when Atlas was in need of financing to overcome its financial woes, and needed some backing to secure a line of credit. Productivity alleges that the defendants abused their positions to divert company funds to their own benefit and wrongfully claim ownership of a substantial share of Productivity's stock. Atlas's grievances are aired in a separate lawsuit now pending in this Court, *Atlas Technologies, LLC v. Levine, et al.*, case number 16-13085. Presently before the Court is the defendants' motion to dismiss three counts of the amended complaint: breach of Michigan Compiled Laws § 450.1541a (which requires corporate directors to discharge their duties in good faith and in the best interest of the corporation) against Jesse Levine (Count IV); breach of Michigan Compiled

Laws § 440.9501, which prohibits filing false UCC financing statements (Count V); and breach of fiduciary duty against Jesse Levine (Count VI). The Court will grant the motion and dismiss Count IV because Michigan law does not apply to the governance of the internal affairs of a Delaware corporation. The motion will be denied in all other respects.

I.

Productivity is a Delaware corporation with its principal place of business in Fenton, Michigan. Defendant Jesse Levine was a member of Productivity's board of directors and an officer, serving as corporate secretary. Julius Levine is Jesse's father; the plaintiff alleges that Jesse and Julius control defendant Levine Trust.

In 2011, Atlas, Productivity's wholly-owned subsidiary, was experiencing financial difficulties. Atlas is a manufacturing company that designs and builds press room automation equipment. The plaintiff says that it was determined, although not by whom, that Atlas should obtain a revolving line of credit.

Atlas obtained a $1.55 million line of credit from non-party Rosenthal & Rosenthal. The Rosenthal loan, however, required collateral. Atlas put up its receivables as collateral for the Rosenthal loan, and defendant Levine Trust contributed its assets as collateral as well. However, before providing the Trust Collateral, the defendants demanded the following: (1) that Jesse be made the Chief Executive Officer of Atlas, (2) that the Atlas operating agreement be modified to enable the defendants to have unprecedented power over Atlas with the role of "Special Manager," and (3) the defendants be paid $15,000 per month (documented in a "Fee and Reimbursement Agreement") for each month that the Trust Collateral was pledged. The plaintiff alleges that these demands were not in the best interests of Atlas or Productivity.

A 2011 LLC Agreement was created, although the plaintiff questions its validity. Since then, the plaintiff represents that the LLC Agreement with the special manager role has been amended and superceded; it now states:

> **GOVERNING LAW**. This Agreement and the affairs of Company, including all prior operating agreements for the Company, shall exclusively be governed by and construed under the laws of the State of Michigan (without regard to conflict of laws principles that would cause the application of the laws of any jurisdiction other than the State of Michigan), all rights and remedies being governed by said laws of the State of Michigan. This governing law section, mandating the application of Michigan law, shall supersede and replace the governing law sections in any prior operating agreements and any other oral or written agreement of the parties with respect to the subject matter herein.

According to the plaintiff, the defendants maintain that as part of the Rosenthal loan transaction, Productivity issued call warrants to the defendants for roughly 15% to 20% of Productivity's stock. The plaintiff disputes that the warrants were issued, and they allege that they have repeatedly requested Jesse to provide evidence of the warrants, which he has failed to do. The plaintiff asserts the LLC Agreement does not mention any warrants to any defendant as part of the Trust Collateral.

The plaintiff also alleges that the defendants wrongfully possess over 452,831 Productivity treasury shares. The plaintiff says that it has repeatedly requested that the defendant turn the treasury shares over to Productivity, but the defendants have refused to do so.

In March 2016, Jesse or the Levine Trust filed eight UCC financing statements with the Michigan Secretary of State naming Productivity and Atlas, among others, as debtors, and the defendants as creditors. The financing statements were filed immediately after Jesse was removed as the CEO and CFO of Atlas. The plaintiff contends that the financing statements were falsely or

fraudulently filed, because there is no security agreement authorizing the defendants to file any such financing statements.

The plaintiff says that it first learned of two of the financing statements in April 2016 and challenged them as being fraudulently filed. Although Michigan terminated the financing statements, they still appear as liens and continue to cause harm to Productivity and Atlas. The plaintiff alleges that in August 2016, it learned about six more financing statements. Those also were challenged and terminated, but the plaintiff contends that they still appear as liens on credit reports, which adversely affects the plaintiff's and Atlas's credit rating, reputation, and goodwill.

The plaintiff filed a six-count complaint on August 25, 2016, and an amended complaint on November 28, 2016. The amended complaint includes a claim for declaratory judgment (Count I); common law and statutory conversion (Count II); common law and statutory replevin (Count III); violation of Michigan Compiled Laws § 450.1541a against Jesse Levine (Count IV); violation of Michigan Compiled Laws § 440.9501 (Count V); and breach of fiduciary duty against Jesse Levine (Count VI). The defendants filed a motion to dismiss certain counts of the complaint, and refiled their motion to dismiss the amended complaint. The motion attacks Counts IV, V, and VI. The defendants also filed a motion to dismiss in *Atlas Technologies, LLC v. Levine*, and many of the arguments parallel those raised here.

## II.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable

to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

A.

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), but the defendants contend that the Court also should consider the 2011 LLC Agreement when assessing the viability of Counts IV, V, and VI of the amended complaint.  It is proper to consider documents outside the pleadings "when a document is referred to in the pleadings and is integral to the claims." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).  Unlike the pleadings in the *Atlas* case, the amended complaint here incorporates several references to the 2011 Agreement, and the substance of that document is integral to at least some of the plaintiff's claims.

One of Productivity's reasons for filing this case was to challenge the defendants' claim that Productivity issued them warrants that would entitle them to purchase up to 20% of Productivity's stock.  The defendants apparently contend that the warrants were issued as part of the Rosenthal loan security transaction, which was part of the restructuring of Atlas in 2011.  To support their position that no such warrants were issued, the plaintiff points to the Atlas 2001 LLC Agreement and the related Fee Agreement, insisting that they make no mention of warrants.  The amended complaint, therefore, urges the fact finder to consider the substance of the 2011 LLC Agreement when deciding their claim to declare the warrants a nullity.  That Agreement is central to the plaintiff's claim. It is proper, therefore to consider the 2011 LLC Agreement; the Court need not convert the present Rule 12(b)(6) motion to a motion for summary judgment.

B.

The defendants contend that Counts IV and VI, alleging that Jesse Levine breached a fiduciary duty to the plaintiff, must be dismissed, because the 2011 LLC Agreement immunizes him from such a claim.  The Court disagrees.

The 2011 LLC Agreement was entered into, in part, to secure the Trust Collateral to help Atlas through financial hard times.  Defs.' Mot., Ex. 2, 2011 LLC Agreement, Recitals A-E.  Under the agreement, Atlas was to be governed by a three member Board of Managers.  The initial managers were Arthur Stupay, Samuel Seidman, and Jesse Levine.  The 2011 LLC Agreement sets forth the various powers of the managers.  Section 9(i) establishes positions for officers, such as the CEO, Vice President, and so forth.

The agreement also creates the temporary position of "Special Manager."  The Special Manager is one of the three board members, but is given some distinct features.  It appears that the Special Manager provision was included so that Jesse could protect the Trust Collateral.  For example, Section 9(j) describes the rights of the Special Manager when a "Special Manager Control Event" occurs.  One such Event would have been Atlas's failure to meet its obligations under the Rosenthal loan.  If such an Event occurred, Jesse would have been given exclusive control over Atlas under Section 9(j).  So if the defendants' collateral were at risk, Jesse could take control of Atlas and protect the Trust Collateral.  The Special Manager position would continue until the Rosenthal loan was satisfied, and the Trust Collateral was no longer at risk.  Section 9(a).  The Special Manager position ended in 2015 when the Rosenthal loan was retired.

The agreement also stated that "[e]ach Manager (other than the Special Manager) and Officer shall have a fiduciary duty of loyalty and care similar to that of directors and officers of business

corporations organized under the General Corporation Law of the State of Delaware, as amended

from time to time (the 'Delaware GCL')." Section 9(k).  The Special Manager was afforded special

exculpation and indemnification under Section 16 of the 2011 LLC Agreement, which stated:

> To the fullest extent permitted by law, including Section 18-ll0l(e) of the Act, none
> of the Special Manager [sic] or any employee, representative, agent or Affiliate of
> the Special Manager (the "Special Manager Covered Persons") shall be liable to the
> Company, *the Member*, the other Managers or any other Person that is a party to or
> otherwise bound by this Agreement, for breach of contract or breach of duties
> (including fiduciary duties) or for any other reason.  To the fullest extent permitted
> by applicable law, the Company and the Member shall jointly and severally
> indemnify and hold harmless each Special Manager Covered Person of and from any
> loss, damage or claim incurred by such Special Manager Covered Person by reason
> of (i) any act or omission performed or omitted by such Special Manager Covered
> Person in its capacity as such or (ii) its status as a Special Manager Covered Person.
> For clarity, the provisions of Section 16(c) and (d) and this *Section 16(a) shall apply
> whether or not the Special Member is acting pursuant to Section 9(j).*

Defs.' Mot., Ex. 2, 2011 LLC Agreement § 16(a) (emphasis added).

That language, the defendants insist, forecloses any claim by Productivity (the sole member

of Atlas Technologies, LLC) for any claim of breach of fiduciary duties and any similar statutory

claim, such as the ones in Counts IV and VI of the amended complaint.

The plaintiff contends that Jesse Levine's misconduct did not occur while he was responding

to a Special Manager Control Event, and therefore he cannot benefit from Section 16(a)'s immunity.

That argument, however, is foreclosed by Section 16(a)'s plain language, which states that the

section applies "whether or not" a Special Manager Control Event occurs.

There are other reasons, however, why Section 16(a) does not require dismissal of Counts

IV or VI.  First, the Special Manager as a member of the Board of Managers, has powers and duties

that are distinct from his authority granted during a Special Manager Control Event.  That section

confers immunity for certain conduct when Jesse was acting as a Special Manager.  But Jesse wore

many hats at Atlas.  In addition to his position as Special Manager, he was also the CEO and CFO.  The 2011 LLC Agreement plainly states that "[e]ach Manager (other than the Special Manager) and *Officer shall have a fiduciary duty of loyalty and care similar to that of directors and officers of business corporations* organized under the General Corporation Law of the State of Delaware, as amended from time to time (the "Delaware GCL")."  Section 9(k) (emphasis added).  Jesse, therefore, still was obligated as a fiduciary in his capacity as an officer.

The second problem with the defendants' argument is that the 2011 LLC Agreement has no bearing on any fiduciary duty Jesse owed as a director to Productivity.  The 2011 LLC Agreement applies to Jesse's dealings with Atlas.  And Section 16(a) does purport to cover the Special Manager's obligations to Productivity as a member of Atlas.  Delaware law allows members of an LLC to contract around those duties.  *See* Del. Code tit. 6, § 18-1101(c).  However, neither the agreement nor section 18-1101(c) alters the fiduciary duties that Jesse owed to Productivity as a director.  Therefore, even assuming that the 2011 LLC Agreement is authentic, it does not absolve Jesse of the fiduciary duties he owed to Productivity in his capacity as a director of that corporation.

The 2011 LLC Agreement with Atlas does not compel the dismissal of Counts IV and VI of the amended complaint.

## C.

Count IV of the amended complaint suffers from a different defect.  The claim is based on Michigan Compiled Laws § 450.1541a, which states that "[a] director or officer [of a corporation] shall discharge his or her duties as a director or officer . . . [i]n good faith[;] . . . [w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances[; and] . . . [i]n a manner he or she reasonably believes to be in the best interests of the corporation."  Mich.

Comp. Laws § 450.1541a(1)(a)-(c).   The defendants contend that Delaware law governs Productivity's affairs, and therefore the plaintiff cannot bring its claim under this Michigan statute.

The defendants point to a choice-of-law provision in the 2011 LLC Agreement.  As noted above, that agreement does not govern Jesse Levine's relationship with Productivity as one of its directors.  The plaintiff alleged that "[t]he LLC Agreement with the Special Manager role has been amended and superseded" and the current agreement designates that Michigan law governs the parties' relationship.  The plaintiff does *not* allege, however, that the current LLC agreement was operative during the relevant time period in this case, and there is no explanation why the Atlas LLC agreement would govern Productivity.  None of the LLC documents provide guidance on which state's laws govern this dispute.

Nonetheless, the Michigan Business Corporation Act "does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state."  Mich. Comp. Laws § 450.2002(2).   The existence and limits of officers' and directors' fiduciary duties impacts the internal affairs of a corporation.  *See Dow Chem. Co. v. Reinhard*, 2008 WL 495501 at *11 (E.D. Mich. Feb. 20, 2008) (J. Ludington) ("Delaware's interests required the displacement of Michigan law in favor of Delaware's law, at least as to a corporation's claim of a breach of fiduciary duty against a former executive."); *Trinity Indus. Leasing Co. v. Midwest Gas Storage, Inc.*, 33 F. Supp. 3d 947, 968 (N.D. Ill. 2014) (explaining that the issue of whether defendants owed plaintiff a fiduciary duty was related to the internal affairs of the limited liability company, which, under Indiana's choice-of-law rules, was governed by the law of the state of incorporation).  Therefore, Delaware law applies to the plaintiff's claims for breach of fiduciary duties.

-10-

Because Delaware law applies, the plaintiff's claim based on a violation of Michigan Compiled Laws § 450.1541a fails. Count IV of the amended complaint will be dismissed.

D.

The defendants similarly challenge Count VI of the amended complaint, which alleges that Jesse Levine breached his fiduciary duty as one of Productivity's directors. The defendants make the unusual argument that Productivity eliminated any fiduciary duties that Jesse owed to it under Delaware's Limited Liability Company Act citing Delaware Code title 6 § 18-1101(c). Section 18-1101(c) allows a member of an LLC to eliminate the fiduciary duties that a member or manager might otherwise owe to an LLC or its other members. But that statute does not address the relationship of a corporate director to his or her board or to the corporation. The defendants have not cited any authority suggesting that Delaware's Limited Liability Company Act applies to corporations. And as the plaintiff notes, section 18-1101(c), if applied to corporations, would conflict with a section of Delaware's General Corporation Law that does not allow directors to escape liability

> (i) [f]or any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit.

Del. Code tit. 8 § 102(7).

The defendants have not shown that the 2011 LLC Agreement or any other agreement has eliminated Jesse's fiduciary duties owed to Productivity. Nor have they provided statutory authority that allows the elimination of Jesse's fiduciary duties to Productivity.

-11-

E.

The defendants argue that the plaintiff's breach of fiduciary claims are untimely under Delaware's three-year statute of limitations. They made a similar argument in the *Atlas* litigation, which the Court rejected. *See Atlas Technologies, LLC v. Levine, et al.*, no. 16-13085, Op. Denying in Part Mot. to Dismiss at 18-20. The Court adopts that same reasoning and incorporates it by reference. The plaintiff's claims in this case were not filed out of time.

F.

The defendants lastly argue that Count V should be dismissed because the plaintiff lacks standing to bring the claim on behalf of Atlas and the damages are speculative. In Count V, the plaintiff alleges that the defendants filed fraudulent financing statements that encumbered its assets and those of Atlas.

Productivity argues that it suffered harm when the fraudulent UCC financing statements were filed because its subsidiary, Atlas, lost valuable customers, and Productivity was required to challenge the fraudulently filed UCC financing statements. The defendants argue that an 'injury arising solely out of harm to a subsidiary corporation is generally insufficient to confer standing on a parent corporation." *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 770 (6th Cir. 2012)). The plaintiff contends that *Petroleum* recognizes an exception to that rule, which allows Productivity to bring claims against the defendants for harm to Atlas because they breached fiduciary duties. That is not accurate. The plaintiff cannot assert a claim here on behalf of Atlas. Nonetheless, Productivity has standing to pursue its claim under section 440.9501 for its own injuries.

Standing is required in order to confer subject matter jurisdiction upon federal courts under Article III of the Constitution. It is "the threshold question in every federal case." *Warth v. Seldin*,

422 U.S. 490, 498 (1975).  The Supreme Court has stated that the standing requirement "limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into 'a vehicle for the vindication of the value interests of concerned bystanders.'" *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002) (quoting *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)).

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ibid.*

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).  For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Ibid.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Ibid.*  "Concreteness, therefore, is quite different from particularization." *Ibid.*  "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Id.* at 1549.

In addition, it is well established that a plaintiff must "assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499 (citations omitted).

Both sides rely on the *Petroleum Enhancer* decision to support their respective standing arguments.  In *Petroleum*, the board of directors of Polar Molecular Holding Corporation were at

-13-

odds with one another.  690 F.3d  at 761.  One of the directors, Socia, who was in the minority, allegedly conspired to obtain a number of valuable patents held by one of Polar Holding's subsidiaries.  *Id*. at 762.  Among the many claims filed by both sides in *Petroleum* was a claim by Polar Holding against Socia for civil conspiracy.  *Id.* at 769.  The district court "determined that Polar Holding lacked standing to bring the claim because the company could not show that it had suffered an injury that was distinct from that suffered by [its subsidiary]."  *Ibid.*  The Sixth Circuit observed that the district court's reasoning was "grounded in the notion that an 'injury arising solely out of harm to a subsidiary corporation is generally insufficient to confer standing on a parent corporation.'" *Id*. at 770 (quoting  9 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 4227 (perm. ed., rev. vol. 2010)).  However, "an exception to this rule exists where the defendant owes the plaintiff [parent] shareholder a fiduciary duty, and the plaintiff seeks to recover for a breach of that duty."  *Ibid*. (quoting *Qantel Corp. v. Niemuller*, 771 F. Supp. 1361, 1367 (S.D.N.Y. 1991) (applying New York law)).

The Sixth Circuit explained that "'a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort.'" *Id*. at 769. (quoting *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 403 N.W.2d 830, 836 (1986)).  The *Petroleum* panel held that Polar Holding had standing to bring the civil conspiracy claim because it had standing to bring the underlying breach-of-fiduciary-duty tort claim.  *Id*. at 771.  "'In such a case, the plaintiff parent shareholder has standing to recover . . . , despite the fact that the subsidiary corporation may itself have a claim against the defendant for the direct injury to it.'"  *Ibid*. (quoting *Qantel*, 771 F. Supp. at 1367).  Socia did not owe the subsidiary corporation a fiduciary duty at the time of his alleged breach because he was not a director or officer of that subsidiary.  *Id*. at 771.

-14-

It is not clear how the plaintiff would apply the *Petroleum* holding to support an argument that it has standing to assert Altas's damages that flowed from filing the fraudulent UCC financing statements.  Productivity did not assert a civil conspiracy claim, and its breach-of-a-fiduciary-duty claim is based on Jesse Levine's obligations to Productivity as a director.  Atlas must assert its own legal rights and interests under Michigan Compiled Laws § 440.9501(7).  Productivity cannot rest its claim for relief on the legal rights or interests of Atlas.  *See Warth*, 422 U.S. at 499.

However, Productivity does have standing to assert its own claim under section 440.9501(7). It has alleged that it was named in the UCC financing statements and incurred costs associated with challenging the statements.  Productivity has standing to recover the damages it incurred from the alleged wrongful filing of financing statements against it.

The defendants also argue that the damages alleged in Count V (breach of Mich. Comp. Laws § 440.9501) are speculative because they are based on business contingency.  The plaintiff disagrees, and says that its allegations are not speculative, and in any case, it has incurred costs challenging the fraudulently filed UCC financing statements.

The Court addressed this same argument, which the defendants raised in the *Atlas* litigation. *See Atlas Technologies, LLC v. Levine, et al.*, no. 16-13085, Op. Denying in Part Mot. to Dismiss at 20-22.  The Court adopts that same reasoning and incorporates it by reference.  The plaintiff has alleged a plausible claim under section 440.9501(7), and if successful on its own claim, it is entitled to the damages it incurred in its own right, including the costs associated with challenging the UCC financing statements.

III.

The plaintiff is a Delaware corporation, and its internal affairs are governed by the laws of that state.  Count IV of the amended complaint, which alleges a violation of the duties that a corporate officer owed to the corporation, is based on Michigan law, and must be dismissed.  The plaintiff has stated plausible claims in Counts V and VI of the amended complaint.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss [dkt. #20] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Count IV of the amended complaint is **DISMISSED**.  The motion otherwise is **DENIED**.

It is further **ORDERED** that the defendants' previously-filed motion to dismiss [dkt. #13] is **DISMISSED AS MOOT**.

It is further **ORDERED** that counsel for the parties appear for a status conference to discuss case management issues on **August 7, 2017 at 9:00 a.m.**

s/David M. Lawson_____
DAVID M. LAWSON
United States District Judge

Dated:   July 26, 2017

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 26, 2017.

s/Susan Pinkowski_____
SUSAN PINKOWSKI

---